**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LEONARD R. WILLIAMS**<br>15526 Drexel Avenue<br>Dolton, IL 60419<br><br>and<br><br>**DEQUITA C. BROWN-WILLIAMS**<br>15526 Drexel Avenue<br>Dolton, IL 60419<br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>**SERVIS ONE, INC. d.b.a. BSI FINANCIAL SERVICES**<br>c/o Incorp Services, Inc.<br>901 S 2nd St., Suite 201<br>Springfield, IL 62704<br><br>and<br><br>**NOONAN & LIEBERMAN, LTD.**<br>c/o James V. Noonan<br>105 W Adams St., Suite 1800<br>Chicago, IL 60603<br>　　　　　　　Defendants. | Case No.<br><br><br><br>__COMPLAINT__<br><br><br>**(DEMAND FOR A JURY TRIAL)** |

Plaintiffs Leonard R. Williams and Dequita C. Brown-Williams, by and through counsel, for their Complaint against Defendants Servis One, Inc. d.b.a. BSI Financial Services and Noonan & Lieberman, Ltd., state as follows:

1

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Leonard Williams and Dequita Brown-Williams (collectively, the "Williamses" or "Plaintiffs") are the owners of real property located at 15526 Drexel Avenue Dolton, IL 60419 (the "Home").

2.      At all times relevant, the Williamses have maintained and currently maintain the Home as their primary, principal residence.

3.      Defendant Servis One, Inc. d.b.a. BSI Financial Services ("Defendant" or "BSI")[1] is the servicer of a note executed by the Williamses (the "Note") and a mortgage on the Home executed by the Williamses that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Defendant Noonan & Lieberman, Ltd. ("Noonan") is a law firm located in Chicago, IL, which was retained by McCormick 105, LLC to file a foreclosure suit against the Williamses in an effort to collect a debt allegedly owed on the Loan, in the Circuit Court of Cook County, Illinois, Case No. 2017 CH 00008.

5.      On or before January 26, 2017, servicing rights to the Loan transferred from Non-Party Urban Partnership Bank to BSI.

---

[1] In the State of Illinois, BSI Financial Services is a fictitious name for Servis One, Inc. (See http://www.cyberdriveillinois.com/departments/business_services/corp.html, last visited September 6, 2017 at 1:30 p.m.).

2

6.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

7.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as the Williamses maintain the Home as their primary residence within this District.

## INTRODUCTION

8.    Like many individuals, over the past decade the Williamses have fallen under economic hardship due to the loss of employment and a reduction in income. As a result, the Williamses feared for their ability to make their payments on the Loan and possibility losing the Home to foreclosure. In an effort to save the Home and to continue to make reasonable payments on the Loan, the Williamses initially sought relief from BSI in the form of a loan modification in November of 2016.

9.    The Williamses did not receive any written correspondence from BSI regarding their loss mitigation application prior to foreclosure proceedings being initiated against them by Noonan on or about January 3, 2017.  The foreclosure proceedings are captioned or otherwise stylized as *McCormick 105, LLC.  v. Dequita C. Brown*, et al., assigned Case No. 2017-CH-00008 in the Circuit Court of Cook County, Illinois (the "Foreclosure").

10.    After the Foreclosure was initiated, the Williamses, by and through counsel, requested information from BSI regarding whether or not BSI had received a complete loss mitigation application.

3

11.     On or about May 8, 2017, BSI provided the Williamses with a copy of a denial of loss mitigation options by and through their response to the Williamses request for information. The denial letter was dated December 20, 2016. The Williamses had not previously received this denial letter.

12.     Determined to save the Home, in an attempt to rectify BSI's dual tracking and their failure to properly respond to their loss mitigation application, the Williamses submitted two (2) separate notices to BSI informing BSI of their errors under Regulation X in failing to properly respond to their requests for information and loss mitigation application. BSI failed to correct its errors pursuant to such notices. If BSI had simply done its job, the Foreclosure may never have happened.

13.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

15.     This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X.

16. The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

17. BSI is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

18. The Williamses have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

19. The Williamses are asserting a claim for relief against BSI for breaches of 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 under Regulation X as set forth, *infra*.

20. The Fair Debt Collection Practices Act (FDCPA) was enacted by Congress to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C § 1692a.

21. Noonan is a debt collector, the Williamses are consumers, and the Loan is a debt, as defined by the FDCPA.

22. The Williamses also assert a private right of action against Noonan under the FDCPA, pursuant to 15 U.S.C. § 1692k, for Noonan's conduct in connection with collection of the Loan and the Williamses are entitled to recover actual damages, statutory damages, costs, and attorneys' fees.

**BACKGROUND**

23. On or before January 27, 2016, BSI began servicing the Loan on behalf of McCormick 105, LLC. A true and accurate copy of the Transfer of Claim other than for Security

5

filed with the United States Bankruptcy Court, Northern Illinois Division and assigned Case # 11-46975 is attached as *Plaintiffs' Exhibit 1*.

24. On or about November 17, 2016, the Williamses by and through counsel, submitted a loss mitigation application to BSI (the "BSI Submission) via facsimile transmission. A true and accurate copy of the facsimile cover page for the BSI Submission is attached as *Plaintiffs' Exhibit 2*.

25. Despite BSI's receipt of the BSI Submission on or about November 17, 2016, the Williamses received no correspondence or communication otherwise from BSI acknowledging their receipt of or otherwise concerning the BSI Submission.

26. On or about January 3, 2017, Noonan initiated the Foreclosure despite the fact that the Williamses had not received a response to their pending loss mitigation application. A printout of the docket in the Foreclosure obtained from the website for the Circuit Court of Cook County, Illinois is attached as *Defendants' Exhibit 3*.

27. On or about March 23, 2017, the Williamses, by and through counsel, sent correspondence to BSI captioned "Re: Request for Information Pursuant to 12 C.F.R. § 1024.36" via Certified U.S. Mail [Receipt No. 7014 2120 0003 0665 6689] (the "RFI") requested that BSI provide the following information:

- An exact reproduction of the life of loan mortgage transactional history for this loan on the system of record used by the servicer. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal

fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

- Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan from the past two (2) calendar years.

- Copies of all broker price opinions for the above-referenced mortgage loan.

- The physical location of the original note related to the above-referenced mortgage loan.

- A true and accurate copy of the original note related to the above-referenced mortgage loan.

- The identity, address, and other relevant contact information for the custodian of the collateral file containing the original collateral documents for the above-referenced mortgage loan, including, but not limited to the original note.

- A detailed copy of your last two (2) analyses of the escrow account of the mortgage.

- Please state each and every date during the time period from January 10, 2014, to the present on which you received a complete loss mitigation application from the above-referenced borrowers…

A true and correct copy of the RFI is attached as *Plaintiffs' Exhibit 4*.

28. BSI received the RFI on or about March 27, 2017 at approximately 7:32 a.m. A copy of the "Product & Tracking Information" from the website for the United States Postal Service (USPS) (www.usps.com) for the RFI is attached as *Plaintiffs' Exhibit 5*.

29.     On or about April 3, 2017, BSI sent correspondence acknowledging their receipt of the RFI.  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 6*.

30.     On or about May 8, 2017, BSI sent correspondence to the Williamses in response to the RFI (the "Response to the RFI").  A true and accurate copy of the Response to the RFI is attached as *Plaintiffs' Exhibit 7*.

31.     The Response to the RFI included correspondence dated December 20, 2016 (the "Response to the BSI Submission").  See *Plaintiffs' Exhibit 7*.  The Response to the BSI Submission was addressed as follows, "Leonard R. Williams and Dequita C. Brown at 15526 Drexel [sic] Dolton, IL 60419." See *Id.*

32.     The Response to the RFI failed to provide a copy of the servicing notes for the past two (2) calendar years as requested by and through the RFI.   See *Plaintiffs' Exhibit 4; Plaintiffs' Exhibit 7*.

33.     On or about June 15, 2017, Noonan filed a Loss Mitigation Affidavit (the "Affidavit") in the Foreclosure.  A true and accurate copy of the Affidavit is attached as *Plaintiffs' Exhibit 8*.

34.     The Affidavit states that the Williamses were denied a modification in December of 2016.  See *Id.*

35.     The Affidavit was also subsequently filed in the Foreclosure by Noonan on or about August 10, 2017.  See *Plaintiffs Exhibit 3*.

36.     On or about June 23, 2017, the Williamses, by and through counsel, sent correspondence to BSI captioned "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for

8

failure to properly respond to a Request for Information in compliance with 12 C.F.R. § 1024.36" via Certified U.S. Mail [Receipt No. 7014 2120 0003 0666 1683] ("NOE #1"). A true and accurate copy of NOE #1 is attached as *Plaintiffs' Exhibit 9*.

37. On or about July 5, 2017, BSI sent correspondence to the Williamses in response to NOE #1 (the "Response to NOE #1"). A true and accurate copy of the Response to NOE #1 is attached as *Plaintiffs' Exhibit 10*.

38. On July 13, 2017, the Williamses, by and through counsel, sent BSI correspondence captioned "Re: Notice of error pursuant to 12 C.F.R. §1024.35(b)(9) for violation of 12 C.F.R. § 1024.41(f); Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(c); Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(b)(2)" via Certified U.S. Mail [Receipt No. 7014 2120 0003 0785 2486] ("NOE #2") alleging that BSI committed multiple errors which include failing to acknowledge the BSI Submission, failing to provide a response to the BSI Submission, and allowing the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process to be initiated against the Williamses. A true and correct copy of NOE #2 is attached as *Plaintiffs' Exhibit 11*.

39. BSI received NOE #2 on or about July 17, 2017 at approximately 8:25 a.m. A copy of the "Product & Tracking Information" from USPS's website (www.usps.com) for NOE #2 is attached as *Plaintiffs' Exhibit 12*.

40.     On or about July 20, 2017, BSI sent correspondence acknowledging their receipt of NOE #2.  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 13.*

41.     On or about August 3, 2017 the Williamses, by and through counsel, filed an Answer to the complaint filed in the Foreclosure.  See *Plaintiffs' Exhibit 3.*

42.     On or about August 11, 2017, Noonan filed a Motion for Summary Judgement, Motion for an Order of Default, Motion for an Order to Appoint a Special Selling Officer, Prove Up, and entry of Judgment of Foreclosure and Sale (the "Motion").  A true and accurate copy of the Motion is attached as *Defendants' Exhibit 14.*

43.     On or about August 24, 2016, BSI sent email correspondence, by and through Foreclosure Counsel, to the Williamses in response to NOE #2.  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 15.*

44.     Correspondence dated August 10, 2017 was attached to the August 24, 2016 email correspondence (the "Response to NOE #2").  A true and accurate copy of the Response to NOE #2 is attached as *Plaintiffs' Exhibit 16.*

45.     The Response to NOE #2 stated that

> Specifically, in response to the matter labeled number 1, Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(ii) [sic] for a violation of § 1024.41(b)(2)(i), in your Letter, BSI timely sent an acknowledgement of receipt of the Borrower loan modification request on November 25, 2016.
>
> In response to the matter labeled number 2, Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(ii) for a violation of §1024.41(c), in your Letter, BSI timely sent a letter notifying Borrower of a denial of modification option on December

20, 2016. Also, BSI believes that the missing suffix, "Avenue", from the address on its letters was not material and did not cause its letters not to arrive at the Borrower mailing address in Dolton Illinois. Nevertheless, BSI will add the suffix "Avenue", as soon as practicable, to the Borrower's mailing address record.

Finally, in response to the matter labeled number 3, Notice of Error pursuant to 12 C.F.R. §1024.35(b)(9) for a violation of §1024.41(f), in your Letter, BSI had no obligation to provide information concerning any appeal in its modification denial letter, as the Borrower's income was higher than the threshold for a modification option, and therefore an appeal process was unavailable. BSI did offer the Borrower a repayment option, which was open for one week, i.e. until December 27, 2016. The Borrower failed to respond to BSI within the required timeframe, and the repayment option offer expired on December 27, 2016.

Based on the foregoing, BSI has complied with the requirements of Regulation X section 1024.41and the filing of the foreclosure on January 3,2017, did not violate the requirements of section 1024.41(f)(2).

See *Id*.

46.     The Response to NOE #2 included correspondence dated November 25, 2016 (the "Acknowledgement of the BSI Submission"). See *Plaintiffs' Exhibit 16*. The Acknowledgement of the BSI Submission was addressed as follows, "Leonard R. Williams and Dequita C. Brown at 15526 Drexel [sic] Dolton, IL 60419." See *Id*.

47.     Due to BSI's and Noonan's conduct, the Williamses have lived with anxiety and stress caused by fear, becoming more concerning by the day, that they would lose the Home to foreclosure without ever receiving a fair review of their d loss mitigation applications.

11

48. Throughout this entire ordeal, the Williamses have simply wanted their loan servicer to conduct a review of their eligibility for loss mitigation options to save the Home from risk of foreclosure and to responsibly resume their mortgage payments and start the long road to rehabilitating their credit.

49. BSI's and Noonan's wrongful and willful actions have caused the Williamses to suffer great emotional distress driven by the fear and uncertainty about whether they will lose their home.

50. BSI's and Noonan's actions have caused the Williamses to spend money on paper, postage and legal fees to compile and send requests for information to BSI and to subsequently draft and send notices of error to seek BSI's compliance with their obligations under Regulation X to obtain information related to the servicing of the Loan and to be reviewed for eligibility for available loss mitigation options.

51. Had BSI acted properly, BSI could have set a path towards a review for and an approval of the Williamses for a loss mitigation option which would have prevented them from the continued fear, suffering, and damage of the extended default period they were forced to endure on their Loan and the eventual commencement of the Foreclosure.

52. At the time of the filing of this Complaint, BSI has had more than Four Hundred Seventy Six (476) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the

CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/)

53.     As a direct and proximate result of the delays caused by BSI, the potential for the Williamses to pursue other legal avenues to resolve their mortgage loan issues, such as a chapter 13 bankruptcy or short sale has been delayed and made more difficult, if not impossible, due to increased arrearages on the Loan, as a direct and proximate result of the conduct of BSI. Further, the severe anxiety and immense uncertainty that the Williamses' have been caused to live under due to the very real possibility of losing their home to foreclosure has caused each of them substantial emotional distress.

## COUNT ONE: AGAINST BSI

## DUAL TRACKING VIOLATION PURSUANT TO 12 C.F.R. §1024.41(f)

### (Violation of prohibition on foreclosure referral)

54.     The Williamses restate and incorporate herein all of their statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten.

55.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

56.     12 C.F.R. §1024.41(c)(1)(ii) states that a servicer shall "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a

notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

57. 12 C.F.R. §1024.41(f)(2) states that if a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, *a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process* unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

58. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(f)(1)(i) provides that:

> Where foreclosure procedure requires a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be filed with a court or other judicial body to commence the action or proceeding (e.g., a complaint, petition, order to docket, or notice of hearing).

14

59. 12 C.F.R. §1024.41(e)(1) provides that "if a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower…"

60. 12 C.F.R. §1024.41(h)(1) provides that "[i]f a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower."

61. 12 C.F.R. § 1024.41(h)(2) explicitly provides that "[a] servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section."

62. The Response to the BSI Submission is dated December 20, 2016. See *Plaintiffs' Exhibit 7*.

63. The Response to the BSI Submission stated that the Williamses were denied for a modification. See *Id.*

64. BSI claims in the Response to NOE #2 that the Williamses were offered a repayment plan via telephone on December 20, 2016. See *Plaintiffs' Exhibit 16*.

65. The Response to NOE #2 states that BSI advised the Williamses, by and through counsel, that the deadline to accept the repayment plan offer was December 27, 2016, approximately seven (7) days after BSI offered the Williamses a repayment plan. See *Id.*

66. No foreclosure sale of the Home was scheduled as of December 20, 2016. See *Plaintiffs' Exhibit 3*.

67. On or about January 3, 2017, Noonan initiated the Foreclosure. See *Exhibit Id*.

68. BSI's actions, in allowing the Foreclosure to be initiated, by and through Noonan, within the fourteen (14) day time period that the Williamses had to appeal the denial of loss mitigation options and accept or reject the loss mitigation option offered by BSI, constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(f).

69. BSI's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Williamses' rights.

70. As a result of BSI's actions, BSI is liable to the Williamses for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: AGAINST NOONAN

## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692k

71. The Williamses restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

68. In the course of acting as a debt collector in the state court foreclosure action, Noonan received and handled the correspondence, including the RFI, NOE #1, and NOE #2, between the Williamses and BSI.

69. Noonan was informed by and through NOE #1 and NOE #2 that the Williamses had not been given the required fourteen (14) days to either appeal the denial of a loss mitigation

option or accept or reject an offer of a loss mitigation option prior to Noonan initiating the Foreclosure.

70.     Despite this information being supplied to them by the Williamses, Noonan moved forward with foreclosure litigation in a practice known as "dual tracking" that is specifically prohibited under the federal Real Estate Settlement Procedures Act.  See *Plaintiffs' Exhibit 3; Plaintiffs' Exhibit 8; and Plaintiffs' Exhibit 14..*

71.     Noonan violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

72.     Noonan violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

73.     The Foreclosure initiated by Noonan against the Williamses remains pending, and the Williamses continue to accrue additional legal fees and costs.

74.     In addition, Noonan's conduct has caused the Williamses to suffer great emotional distress driven by the fear that they might lose their home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

75.     Noonan's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the Williamses' rights.

## COUNT THREE: AGAINST BSI

## VIOLATION OF 12 C.F.R. § 1024.41(b)(2)(i)(B)

### (Failure to acknowledge the BSI Submission)

81. The Williamses restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

82. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

83. 12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section."

84. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

85. At no point in time during which BSI held the servicing rights for the Loan was there a foreclosure sale scheduled. See *Plaintiffs Exhibit 3.*

86.    On or about November 17, 2016, the Williamses, by and through counsel, sent the BSI Submission to BSI via facsimile transmission. See *Plaintiffs' Exhibit 2*.

87.    BSI received the BSI Submission on or about November 17, 2016. See *Id.*

88.    The BSI Submission constituted a loss mitigation application pursuant to 12 C.F.R. § 1024.41. See *Plaintiffs' Exhibit 2*.

89.    Within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of November 17, 2016, that is, on or before November 25 2016, BSI was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Williamses.

90.    On July 13, 2017, the Williamses, by and through counsel, sent BSI NOE #2. See *Plaintiffs' Exhibit 11*.

91.    NOE # 2 alleged that BSI violated 12 C.F.R. § 1024.41(b)(2)(i)(B) by failing to provide written acknowledgement of the BSI Submission.  See *Id.*

92.    BSI included the Acknowledgment of the BSI Submission within the Response to NOE #2.  See *Plaintiffs' Exhibit 16*.

93.    The Williamses had not received the Acknowledgement of the BSI Submission prior to their receipt of the Response to NOE #2. See *Exhibit 11*.

94.    The Acknowledgement of the BSI Submission was addressed as follows, "Leonard R. Williams and Dequita C. Brown at 15526 Drexel [sic] Dolton, IL 60419." See *Plaintiffs' Exhibit 16*.

95.    The Williamses mailing address is 15526 Drexel Avenue Dolton, IL 60419.  See *Exhibit 8*.

19

96.     BSI failed to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the accurate address for the Williamses on or before November 25, 2016. See *Plaintiffs' Exhibit 16.*

97.     BSI's failure to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Williamses on or before November 25, 2016 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(b)(2)(i)(B).

98.     BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Williamses' rights.

99.     In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) directly and proximately caused the Williamses to incur actual damages including but not limited to attorneys' fees and expenses in researching, drafting, and sending the RFI, NOE #1, and NOE #2, in an attempt to have BSI properly acknowledge and review the BSI Submission. See *Plaintiffs' Exhibit 4; Plaintiffs' Exhibit 9; Plaintiffs' Exhibit 11.*

100.    As a result of BSI's actions, BSI is liable to the Williamses for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR: AGAINST BSI

### VIOLATION OF 12 C.F.R. § 12 C.F.R. § 1024.41(c)

### (Failure to review a complete application within thirty (30) days)

101.    The Williamses restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

102.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

103.    12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

104.    12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1024.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

105.    12 C.F.R. § 1024.41(c)(1) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:(i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan

modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

106.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

107.     At no point in time during which BSI held the servicing rights for the Loan was there a foreclosure sale scheduled. See *Plaintiffs' Exhibit 3*.

108.     On or about November 17, 2016, the Williamses, by and through counsel, sent the BSI Submission to BSI via facsimile transmission. See *Plaintiffs' Exhibit 2*.

109.     BSI received the BSI Submission on or about November 17, 2016.

110.     The BSI Submission constituted a loss mitigation application pursuant to 12 C.F.R. § 1024.41. See *Plaintiffs' Exhibit 2*.

111.     The BSI Submission was a complete loss mitigation application pursuant to 12 C.F.R. § 1024.41(b)(1).  See *Plaintiffs' Exhibit 16*.

112.     As of November 17, 2016, BSI was in possession of a complete loss mitigation application by and through their receipt of the BSI Submission and therefore were obligated to review such application in accordance with the requirements of 12 C.F.R. § 1024.41(c)(1) within thirty (30) days of November 17, 2016, that is, on or before December 17, 2016.  See Plaintiffs' *Exhibit 16.*

113.    On March 23, 2017, the Williamses, by and through counsel, sent the RFI to BSI. See *Plaintiffs' Exhibit 4*.

114.    On or about May 8, 2017, BSI sent the Williamses the Response to the RFI.  See *Plaintiffs' Exhibit 7*.

115.    BSI included the Response to the BSI Submission within the Response to the RFI. See *Id.*

116.    The Williamses had not received the Response to the BSI Submission prior to their receipt of the Response to the RFI.  See *Plaintiffs' Exhibit 11*.

117.    The Response to the BSI Submission was addressed as follows, "Leonard R. Williams and Dequita C. Brown at 15526 Drexel [sic] Dolton, IL 60419." See *Plaintiffs' Exhibit 7*.

118.    The Williamses mailing address is 15526 Drexel Avenue Dolton, IL 60419.  See *Plaintiffs' Exhibit 8*.

119.    The Response to NOE # 2 states that during a telephone call, BSI informed the Williamses, by and through counsel, "that the investor would offer a repayment option…"  See *Plaintiffs' Exhibit 16*.

120.    The repayment option was not included in the Response to the BSI Submission. See *Plaintiffs' Exhibit 7*.

121.    BSI failed to generate the Response to the BSI Submission on or before December 17, 2016 as required by 12 C.F.R. § 1024.41(c)(ii).

122.   BSI failed to send the Response to the BSI Submission to the accurate address for the Williamses as required by 12 C.F.R. § 1024.41(c)(ii).

123.   The Response to NOE #2 did not provide the Williamses with a copy of any written repayment plan option offered by the investor of the Loan as required by 12 C.F.R. § 1024.41(c)(ii). See *Plaintiffs' Exhibit 16*.

124.   The repayment option was not provided in a written notice to the Williamses as required by 12 C.F.R. § 1024.41(c)(ii). See *Plaintiffs' Exhibit 7; Plaintiffs' Exhibit 16*.

125.   BSI's failure to (1) timely review the complete loss mitigation application comprised of the BSI Submission; (2) ensure their response to the BSI Submission was received by the Williamses by sending it to the accurate address; and (3) provide the Williamses with a notice in writing containing their loss mitigation offer constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

126.   BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Williamses' rights.

127.   In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(c)(ii) directly and proximately caused the Williamses to incur actual damages including but not limited to attorneys' fees and expenses in researching, drafting, and sending the RFI, NOE #1, and NOE #2, in an attempt to have BSI properly acknowledge and review the BSI Submission. See *Plaintiffs' Exhibit 4; Plaintiffs' Exhibit 9; Plaintiffs' Exhibit 11*.

128.   As a result of BSI's actions, BSI is liable to the Williamses for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FIVE: AGAINST BSI

## VIOLATIONS OF 12 C.F.R. § 1024.35 AND 12 C.F.R. § 1024.36

### (Failure to properly respond to the RFI and NOE #2)

129.    The Williamses restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

130.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

131.    12 C.F.R. § 1024.35(e)(3)(i)(B) provides that, in regard to a notice of error submitted pursuant to 12 C.F.R. § 1024.35(b)(11), a servicer must comply with 12 C.F.R. § 1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error or prior to the date of a foreclosure sale, whichever is earlier.

132.    12 C.F.R. § 1024.36(d)(2)(i)(B) provides that, in regard to a request for information submitted pursuant to 12 C.F.R. § 1024.36(a) a servicer must comply with 12 C.F.R.

§ 1024.36(d)(2)(i)(B) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the information request.

133.    12 C.F.R. § 1024.36(e)(1) provides that a servicer must respond to an information request by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or [c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

134.    12 C.F.R. § 1024.36(f)(1) provides that the requirements of 12 C.F.R. §§ 1024.36(c) and 1024.36(d) do not apply if the request at issue is duplicative, seeks confidential, proprietary, privileged, or irrelevant information, or if it is overbroad or unduly burdensome.

135.    12 C.F.R. § 1024.36(f)(2) provides that if a servicer determines that any of the exceptions contained in 12 C.F.R. § 1024.36(f)(1) apply, then a servicer is required send written notice to the borrower stating the basis under 12 C.F.R. § 1024.36(f)(1) for such determination.

136.    On or about March 23, 2017, the Williamses, by and through counsel, sent the RFI via Certified U.S. Mail [Receipt No. 7014 2120 0003 0665 6689] to BSI at BSI's self-designated address pursuant to 12 C.F.R. § 1024.36(b). See *Plaintiffs' Exhibit 4*.

137.    RFI #1 constituted a request for information pursuant to 12 C.F.R. § 1024.36(a). See *Plaintiffs' Exhibit 4*.

138.     BSI received RFI #1 on or about March 27, 2017 at approximately 3:50 p.m. See *Plaintiffs' Exhibit 5*.

139.     On or about April 3, 2017, BSI sent correspondence acknowledging their receipt of RFI #1.  See *Plaintiffs' Exhibit 5*.

140.     BSI sent their Response to the RFI to the Williamses, by and through counsel, on or about May 8, 2017.  See *Plaintiffs' Exhibit 6*.

141.     BSI, by and through their Response to the RFI stated that "[w]ith regard to any servicing notes related to our servicing of your client's account is considered proprietary, confidential or privileged information of BSI and will not be provided"  See *Plaintiffs' Exhibit 6*.

142.     In order to obtain the information requested by and through the RFI , the Williamses were caused to send NOE #1 to BSI on or about June 23, 2017 via Certified U.S. Mail [Receipt No. 7014 2120 0003 0666 1683] to BSI's self-designated address pursuant to 12 C.F.R. § 1024.35(c) alleging that BSI committed an error by failing to properly respond to the RFI.  See *Plaintiffs' Exhibit 9*.

143.     Comment 1 of the CFPB'S Official Interpretations of 12 C.F.R. § 1024.36(f)(1)(ii) provides illustrative examples as to what constitutes confidential, proprietary, or privileged information for the purposes of requests for information pursuant to 12 C.F.R. § 1024.36:

> Confidential, proprietary or privileged information may include information requests relating to, for example:
>    i.  Information regarding management or profitability of a servicer, including information provided to investors in the servicer.

27

    ii.  Compensation, bonuses, or personnel actions relating to servicer personnel, including personnel responsible for servicing a borrower's mortgage loan account;

   iii.  Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations; or

   iv.  Information protected by the attorney-client privilege.

See *Id.*

144.    None of the requests for information as contained in RFI #1 sought confidential, proprietary, or privileged information. Rather, BSI's objections seem to merely be boilerplate rather than being properly utilized in a determination as to whether any of the exceptions contained in 12 C.F.R. § 1024.36(f)(1) are applicable. See *Plaintiffs' Exhibit 7; Plaintiffs' Exhibit 10.*

145.    BSI sent the Response to NOE #1 to the Williamses, by and through counsel, on or about July 5, 2017. See *Plaintiffs' Exhibit 10*.

146.    BSI, by and through their Response to NOE #1 stated that "BSI maintains its response in its letter dated May 8, 2017…denying your request to provide you '[c]opies of any and all servicing notes related to [BSI's] servicing of the above referenced mortgage for the past two (2) calendar years' on the grounds specified in the Response, namely: because these records contain proprietary, confidential or privileged information." See *Id*.

147.    BSI subsequently acknowledged in their Response to NOE #2 that their servicing records demonstrate the actions they took regarding their review of the BSI Submission. See *Plaintiffs' Exhibit 16*.

148.    BSI did not provide the Williamses with a copy of the servicing notes, despite acknowledging that the servicing notes were referenced in order to produce the Response to NOE #2.  See *Id.*

149.    It is clear that BSI did not perform a reasonable investigation into the error alleged by and through NOE #1.  If they had, it would have been clear that the portion of the servicing notes for the Loan that reference BSI's handling of the Williamses loss mitigation application is not proprietary, confidential or privileged information.

150.    BSI actions, in failing to provide all of the information requested by and through RFI #1, or to alternatively provide an appropriate basis pursuant to 12 C.F.R. § 1024.36(f)(1), by and through the Response to the RFI, constitute a violation of 12 C.F.R. § 1024.36.

151.    BSI actions, in failing to perform a reasonable investigation into the error alleged by and through NOE #2, constitute a clear, distinct, and separate violation of 12 C.F.R.§ 1024.35(e).

152.    BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Williamses' rights.

153.    In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.36 directly and proximately caused the Williamses to incur actual damages including but not limited to attorneys' fees and expenses in researching, drafting, and sending NOE #1, in an attempt to have BSI properly provide the information requested by and through the RFI. See *Plaintiffs' Exhibit 9*.

**COUNT SIX: AGAINST BSI**

29

## VIOLATION OF 12 C.F.R. § 1024.35(e)

### (Failure to perform a reasonable investigation of errors alleged through NOE #2)

154.    The Williamses restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

155.    The Williamses restate and incorporate herein each of their statements and allegations contained in paragraphs 130 through 131 in their entirety, as if fully rewritten herein.

156.    On or about November 17, 2016, the Williamses, by and through counsel, submitted the, a loss mitigation application, to BSI via facsimile transmission. See *Plaintiff's Exhibit 2*.

157.    Despite receiving the BSI Submission on or about November 17, 2016 and the RFI on or about March 27, 2017, BSI did not send correspondence acknowledging receipt of the BSI Submission until August 10, 2017. See *Plaintiffs' Exhibit 16*.

158.    Additionally, despite receiving the BSI Submission on or about November 17, 2016, BSI did not send correspondence responding to the BSI Submission until May 8, 2017. See *Plaintiffs' Exhibit 7*.

159.    On July 13, 2017, the Williamses, by and through counsel, sent NOE #2 to BSI via Certified U.S. Mail [Receipt No. 7014 2120 0003 0785 2486] to BSI's self-designated address pursuant to 12 C.F.R. § 1024.35(c) alleging that BSI committed errors by (1) failing to acknowledge the BSI Submission; (2) failing to properly respond to the BSI Submission; (3) dual tracking the Williamses by allowing the Foreclosure to be initiated by Noonan. See *Plaintiffs' Exhibit 11*.

160.   The Williamses alleged by and through NOE #2 that BSI had improperly addressed the Response to the BSI Submission which resulted in them not receiving the Response to the BSI Submission until their receipt of the Response to the RFI.  See *Id.*

161.   BSI received NOE #2 at their designated address pursuant to 12 C.F.R. § 1024.35(c) on or about July 17, 2016 at approximately 1:31 p.m.  See *Plaintiffs' Exhibit 12.*

162.   On or about July 20, 2017, BSI sent correspondence acknowledging their receipt of NOE #2. See *Plaintiffs' Exhibit 13.*

163.   BSI sent the Response to NOE #2 to the Williamses, by and through counsel, on or about August 10, 2017.  See *Plaintiffs' Exhibit 16.*

164.   Response to NOE #2 stated that "BSI believes that the missing suffix, "Avenue", from the address on its letters was not material and did not cause its letters not to arrive at the Borrower mailing address in Dolton Illinois.  Nevertheless, BSI will add the suffix "Avenue", as soon as practicable, to the Borrower's mailing address record. See *Id.*

165.   Response to NOE #2 did not include any proof that the Acknowledgment of the BSI Submission and the Response to the BSI Submission had actually been delivered to the Williamses at the Home prior to the Williamses receipt of the Response to the RFI and the Response to NOE #2, respectively.  See *Plaintiffs' Exhibit 11; Plaintiffs Exhibit 16.*

166.   BSI also states, by and through the Response to NOE #2, that "BSI had no obligation to provide information concerning any appeal in its modification denial letter, as the Borrower's income was higher than the threshold for a modification option, and therefore an

appeal process was unavailable. BSI did offer the Borrower a repayment option, which was open for one week, i.e. until December 27, 2016." See *Plaintiffs Exhibit 16.*

167. It is clear that BSI did not perform a reasonable investigation into the errors alleged by and through NOE #2. 12 C.F.R. § 1024.41(e)(1) and 12 C.F.R. § 1024.41(h)(1) clearly state that "a servicer may require that a borrower accept or reject an offer of loss mitigation no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower" and that "a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower."

168. Proof of the Foreclosure being initiated on January 3, 2017, within the fourteen (14) day time frame required by 12 C.F.R. § 1024.41(e)(1) and 12 C.F.R. § 1024.41(h)(1), was enclosed with NOE #2, yet it appears that BSI did not even consider this information that is critical to the alleged errors. See *Plaintiffs' Exhibit 11*.

169. Any reasonable investigation into the error alleged by and through NOE #2 would have included a review of the enclosures to NOE #2 and had BSI actually reviewed the enclosures to NOE #2, it would have been readily apparent that BSI had in fact dual tracked the Williamses in direct contravention of BSI's self-serving statements contained within the Response to NOE #2. See *Plaintiffs' Exhibits 11; Plaintiffs' Exhibit 16*.

170. BSI actions, in failing to perform a reasonable investigation into the error alleged by and through NOE #2, constitute a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e).

171.   BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Williamses' rights.

172.   As a result of BSI's actions, BSI is liable to the Williamses for actual damages, statutory damages, costs, and attorneys' fees.

173.   As a result of BSI's actions, BSI is liable to the Williamses for actual damages, statutory damages, costs, and attorneys' fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Leonard R. Williams and Dequita C. Brown-Williams pray that this Court enter its order granting judgment in their favor as follows:

A)   A finding that BSI committed violations of 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 as alleged in Counts One and Three through Six;

B)   A finding that Noonan committed a violation of the FDCPA as alleged in Count Two;

C)   For actual damages in an amount to be determined at trial as to each and every count;

D)   For costs, and reasonable attorneys' fees;

E)   For statutory damages against BSI in the amount of Two Thousand Dollars ($2,000.00) as to each violation of 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41, as alleged by and through Counts One and Three through Six;

F)   For statutory damages against Noonan in the amount of One Thousand Dollars ($1,000.00) for their violation of the FDCPA as alleged in Count Two;

G)    For punitive damages against BSI and Noonan in an amount to be determined at

trial; and,

H)    Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Rusty E. Payton*
Rusty E. Payton
Marc E. Dann
DANNLAW
P.O. Box 603104
Cleveland, OH 44103
216/373-0539
216/373-0536 – fax
notices@dannlaw.com
*Attorneys for Plaintiffs*


## **JURY DEMAND**

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors

permitted by law.

*/s/ Rusty E. Payton*
Rusty E. Payton
DannLaw
*Attorney for Plaintiffs*

34